## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br>**DAVID MARTINEZ AGUILAR,**<br>Debtor. | Case No. 21-00553-NGH<br><br>Chapter 7 |

### MEMORANDUM OF DECISION

**INTRODUCTION**

Debtor David Martinez Aguilar ("Debtor") filed a chapter 7[1] bankruptcy petition on August 24, 2021. Doc. No. 1.[2] In doing so, Debtor was represented by attorney Kameron M. Youngblood ("Youngblood"). Upon finding a number of issues concerning how Youngblood was handling his cases, the United States Trustee ("UST") filed a motion for sanctions in this and over 50 other cases.[3] Doc. No. 20. The Court conducted a hearing on the motions on January 3, 2022, and allowed supplemental briefing. The UST filed a supplemental brief, Doc. No. 42, and a motion requesting the evidentiary record be supplemented with an affidavit of chapter 7 trustee Patrick Geile, Doc. No. 41.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure 1001–9037, and all "LBR" references are to this Court's Local Bankruptcy Rules.

[2] The Court took judicial notice of the record pursuant to Federal Rule of Evidence 201 at the January 3, 2022 hearing in this case.

[3] Seven of the cases were assigned to the undersigned Judge; the remaining 44 were assigned to Chief Judge Joseph M. Meier. The UST's motion references another case assigned to the undersigned Judge, *In re Wheeler*, Case No. 20-00532-NGH, *see* Doc. No. 20 at 29, however, the motion was not filed in the *Wheeler* case, and therefore, the Court will not enter a decision or order in that case.

MEMORANDUM OF DECISION - 1

No objections were filed before the February 15, 2022 deadline,[4] and the UST's motions for sanctions were taken under advisement in the seven cases before the undersigned Judge.

After considering the record, submissions, and arguments, as well as applicable law, this decision resolves the motion for sanctions. Fed. R. Bankr. P. 7052; 9014.

**DISCUSSION AND DISPOSITION**

In the motion in this case, the UST alleges several specific areas of sanctionable conduct, arguing Youngblood: 1) violated Idaho Rules of Professional Conduct; 2) filed a misleading Rule 2016(b) disclosure; 3) charged Debtor unreasonable fees; and 4) created a conflict of interest between himself and Debtor through his fee agreement. Additionally, the UST alleges a pattern and practice of violations under § 526. As a result, the UST seeks the following monetary and non-monetary remedies:

1. Cancelling or voiding any contract or agreement between Debtor and Youngblood under § 329;

2. Disgorging the fees Debtor paid to Youngblood under § 329;

3. Injunctive relief under § 526(c)(5) and the Court's inherent powers, specifically:
   a. Suspending Youngblood's practice in front of the Court until the Court is satisfied the concerns identified have been corrected;
   b. If Youngblood is allowed to practice in front of the Court again, requiring him to file a "status report" signed by the client and Youngblood in each case where he appears as counsel, attesting that:
      i. Youngblood personally met and reviewed the Petition, Schedules, Statement of Financial Affairs, and other documents with the client prior to filing;
      ii. The client's questions have been answered regarding the Petition, Schedules, Statement of Financial Affairs, and other documents, and the information included therein, and the client is satisfied he or she

---

[4] The motion to supplement will therefore be granted.

MEMORANDUM OF DECISION - 2

   iii. is receiving adequate representation from Youngblood; and

   iii. The client provided Youngblood a copy of the wet signatures for the Petition, Schedules, SOFA, and other documents filed in the case. The requirement to file such a report should continue until the Court is satisfied it is no longer necessary.

4. Imposing a civil penalty under § 526(c)(5)(B) against Youngblood to deter him from making untrue and misleading statements and misrepresentations in the future, as a result of his intentional violations, and pattern and practice of violating, § 526(a)(1), (a)(2), and (a)(3).

Doc. Nos. 20 and 42. The Court will discuss each of the allegations and sanctions sought.

  **A.**  **Sanctionable Conduct**

   1.  **Idaho Rule of Professional Conduct 1.3**

The Idaho Rules of Professional Conduct apply to attorneys practicing before this Court. *See* LBR 9010.1(g) ("members of the bar of this court shall adhere to the Rules of Professional Conduct promulgated and adopted by the Supreme Court of the State of Idaho."); *see also In re Grimmett*, 2017 WL 2437231, at *5 (Bankr. D. Idaho Jun. 5, 2017), *aff'd* Case No. 1:17-cv-00266-EJL (D. Idaho Feb. 16, 2018). The scope of the Idaho Rules of Professional Conduct provides guidance to the Court:

> Some of the Rules are imperatives; cast in the terms "shall" or "shall not." These define proper conduct for purposes of professional discipline. Others, generally cast in the term "may," are permissive and define areas under the Rules in which the lawyer has discretion to exercise professional judgment. No disciplinary action should be taken when the lawyer chooses not to act or acts within the bounds of such discretion. Other Rules define the nature of relationships between the lawyer and others. The Rules are thus partly obligatory and disciplinary and partly constitutive and descriptive in that they define a lawyer's professional role. Many of the Comments use the term "should." Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules.

Idaho Rule of Professional Conduct "Scope."

MEMORANDUM OF DECISION - 3

Idaho Rule of Professional Conduct 1.3 provides that a lawyer "shall act with reasonable diligence and promptness in representing a client." The commentary to the rule further states the "[u]nless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client." Idaho R. Prof. Conduct 1.3 Comment. ¶ 4. The UST's motion for sanctions asserts Youngblood did not fulfill his duties of diligence and communication in Debtor's case. Specifically, the UST points to Youngblood's failure to appear at Debtor's § 341(a) meeting of creditors on September 23, 2022, and October 14, 2022. That failure not only violated Youngblood's professional responsibilities to Debtor under Idaho Rule of Professional Conduct 1.3, but also his own agreement with Debtor as represented in his Rule 2016(b) disclosure of professional compensation as discussed below. Therefore, Youngblood's inactions are sanctionable.[5]

2. **Rule 2016(b) Disclosure**

Section 329 of the Code requires an attorney to disclose the amount of all "compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case[.]" This disclosure requirement is implemented by Rule 2016(b), which requires:

---

[5] The UST also argues that while Youngblood alerted the chapter 7 trustee that he would not appear at the October § 341(a) meeting of creditors and was in the process of closing his office, Doc. No. 41-1 (affidavit of Patrick Geile), "apparently, Youngblood did not communicate the same message to his client" and as such sanctions are also justified under Idaho Rule of Professional Conduct 1.4. Doc. No. 20 at 31. There is insufficient evidence for the Court to make any findings in this case regarding communications or lack thereof between Debtor and Youngblood, and sanctions will not be imposed on this basis.

MEMORANDUM OF DECISION - 4

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. . . . A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

In this case, Youngblood filed a Rule 2016(b) disclosure statement with the petition on August 24, 2021 ("Disclosure").  Doc. No. 5.  The first page of the Disclosure indicates Debtor paid Youngblood nothing prior to the bankruptcy filing, but the agreed fee was $2,210 "for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case[.]"  *Id.*  It further provides in paragraph 5:

> In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
>
> a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
> b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
> c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
> d. OTHER:  [nothing listed].

*Id*.  Nevertheless, the Disclosure also describes separate pre- and post-petition fee agreements executed by Youngblood and Debtor:

> a. The first, pre-petition fee agreement was signed prior to the filing of the petition for the preparation and filing of the bankruptcy petition, statement about social security number, creditor list and other documents required at the time of filing; and review, analysis and advisement of the typical matters that are required to be performed prior to filing by a bankruptcy attorney under the applicable bankruptcy and ethical rules. Counsel's fees paid under the first fee agreement (if any) are shown in Section 1 above as "Prior to the filing of this statement I have received", and

MEMORANDUM OF DECISION - 5

        any fees earned but not paid for the pre-petition work were waived by counsel.

        b.      The second, post-petition fee agreement was signed after the petition was filed for post-petition work to be performed, including the preparation of schedules of assets and liabilities, and statement of financial affairs; preparation and filing of other required documents; representation at the first meeting of creditors; and other services outlined in the fee agreement. Counsel's fees owed by debtor under this second fee agreement for post-petition work are reflected in Section 1 above as the Balance Due. The second fee agreement allows the debtor(s) to pay these post-petition fees and costs in installments over 12 months following the bankruptcy filing.

*Id.* at ¶ 9.

        The text of Youngblood's Disclosure is misleading and inconsistent. First, paragraph 5(a)–(c) provides that for the $2,210 fee, Youngblood will perform both pre- and post-petition services. Those include analyzing Debtor's financial situation, determining whether a bankruptcy petition ought to be filed and preparing the petition, all clearly pre-petition services. But for the same fee, Youngblood also agrees to represent Debtor at the meeting of creditors, which clearly occurs post-petition.

        Then in paragraph 9, Youngblood inconsistently discloses that he and Debtor entered into two separate fee agreements, with the first covering pre-petition services such as the preparation and filing of the bankruptcy petition and other required documents, for which any unpaid amount of those fees and costs at the time of filing were "waived." *Id.* at ¶ 9(a). The second fee agreement covers everything else in the case, other than those tasks Youngblood excepted from the agreement in paragraph 6. *Id.* at ¶ 9(b). As such, it is unclear whether Youngblood charged Debtor anything for pre-petition services—the Disclosure indicates the $2,210 fee covers both pre- and post-petition services, while a separate paragraph suggests Youngblood did all pre-petition

MEMORANDUM OF DECISION - 6

work for free.  This inconsistency renders the Disclosure misleading.

Moreover, given the content of the Disclosure, and the representations made at the January 3 hearing, the Court ordered Youngblood to file an amended Rule 2016(b) statement to disclose all payments Youngblood received post-petition.  Doc. No. 38. Youngblood failed to comply with that Order.  That failure is itself sanctionable.

3. **Conflicts of Interest**

Next, the UST alleges the language in the Disclosure creates a conflict of interest prohibited by the Idaho Rules of Professional Conduct.  Here, Youngblood's Disclosure provides details about the financial agreement between Debtor and Youngblood.  First, Youngblood explains the fee options available to Debtor, as follows:

> Counsel offered debtor(s) two options for the payment of counsel's fees: (1) pre-pay the fees in full prior to the Chapter 7 bankruptcy petition being filed, or (2) bifurcate the attorney services into pre- and post-petition work in order to facilitate the debtor(s) obtaining the benefit of being filed right away and making payments post-petition for post-petition work.  Counsel charges a higher fee for the second option.  There are a number of reasons for charging a higher fee:
>
> > a.  Counsel performs additional work to split the engagement;
> >
> > b.  Counsel takes on risk by allowing the debtor to pay the attorney fee over time instead of collecting the entire fee up front;
> >
> > c.  The option provides the debtor(s) with the benefit of a quicker filing than if the debtor(s) had to come up with the money to pay in advance;
> >
> > d.  The option gives debtor(s) an opportunity to begin rebuilding their credit score by making timely payments toward the attorney fee;
> >
> > e.  Counsel will not charge the debtor additional fees for certain services that if required would otherwise cost the debtor(s) more if debtor(s) had paid the entire fee before the case was filed; and

MEMORANDUM OF DECISION - 7

> f. FSF (described below) charges a fee to Counsel for its financing, payment management, credit reporting and other services provided to Counsel, for which FSF charges a fee equal to 25% of the attorney fee that the Law Firm charges debtor(s) for the post-petition services.
>
> This higher fee nonetheless satisfies the reasonability requirement under Section 329 applying the Lodestar analysis. The additional cost was fully disclosed to debtor(s) and debtor(s) chose the second option.

Doc. No. 5 at ¶ 8. Thereafter, paragraph 10 provides further information regarding the third-party lender he uses to finance this second option:

> Counsel has a recourse line of credit from Fresh Start Funding, L.L.C. ("FSF") secured by a lien against the accounts receivable of counsel, including amounts owed by debtor(s) to counsel. FSF also provides payment management and processing services and will collect installment payments from debtor(s) as well as any third-party guarantor (if applicable) on behalf of counsel. FSF will apply amounts paid by debtor(s) against counsel's indebtedness to FSF under the line of credit. FSF also provides credit reporting services to the debtor(s), education and training to counsel and his/her staff, and a defense guaranty and indemnity to counsel. For its services, FSF charges a fee calculated as 25% of the receivable owed by debtor(s) to counsel and counsel is required to pay this fee regardless of whether debtor(s) makes their required payments. As a fully-recourse obligation this fee does not constitute fee sharing under the Bankruptcy Code or the Rules of Professional Conduct.

*Id.* at ¶ 10.

Youngblood thus arranged for Debtor to pay his attorney's fees under an installment contract. The Court finds this problematic. As the UST points out, this arrangement violates the Idaho Rules of Professional Conduct.

Idaho Rule of Professional Conduct 1.7 governs conflicts of interest and provides that a lawyer shall not represent a client if "there is a significant risk that the representation of one or more clients will be materially limited by . . . the personal interests of the lawyer . . ." Idaho Rule of Professional Conduct 1.7(a).

MEMORANDUM OF DECISION - 8

Youngblood's arrangement with Debtor established in the Disclosure is essentially an installment payment plan, with the payments being assigned to a third-party for collection, giving Youngblood access to a line of credit. It is patently clear, however, that Debtor could not afford to make payments. Debtor's schedule J plainly shows that Debtor's expenses exceeded his income by $56.23 each month. Doc. No. 15 at 38–41 (schedules I and J). As such, this payment arrangement put Debtor at financial risk. Thus, it appears Youngblood signed Debtor up for a plan that was financially harmful to Debtor but beneficial to Youngblood. This creates a conflict of interest and violates Idaho Rule of Professional Conduct 1.7(a).

    4.    **Reasonableness of Bifurcated Fees**

The UST also asserts the fees in this case were unreasonable based on the conflicts created under the fee agreement between Debtor and Youngblood and based on the fee structure as compared to other cases. The UST argues that because the Disclosure provides that Youngblood is charging nothing, or in the verbiage of the Disclosure, he "waives" the fees for pre-petition services, then his post-petition services are therefore worth $2,210. The UST contrasts this figure with those cases where Youngblood's fee is not bifurcated—where the debtor pays in cash up front. The UST's theory is that if Youngblood's post-petition services are worth $2,210, then a cash deal should be for more money, as the debtor is also paying Youngblood for his pre-petition work. To prove this point, the UST considered all of Youngblood's open chapter 7 cases where the payment was made in cash and averaged the total fee charged. The UST then did the same with the bifurcated cases, but first subtracted the 25% fee the company providing

MEMORANDUM OF DECISION - 9

the line of credit charges Youngblood for this service, and then averaged the remaining fee amounts. The UST found that the cash payment fee was only $18.71 more than that charged in the bifurcated cases. From this the UST concluded that either Youngblood's pre-petition work was only worth $18.71 on average, which is implausible, or that the bifurcated fees were unreasonable.

The Court cannot reach the same conclusion on the evidence presented. Whether fees charged are reasonable is case specific and cannot be based on the law of averages. Each case is different, and what is a reasonable fee to charge one debtor may not be so for the next. Accordingly, the UST's motion for sanctions due to the unreasonableness of the fee charged will be denied.

5. **"Pattern and Practice" of Violations Under § 526**

The UST also argues it has demonstrated a pattern and practice of Youngblood violating § 526. Section 526 of the Code provides restrictions on "debt relief agencies." It provides, in pertinent part:

(a) A debt relief agency shall not—

(1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

(2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

(3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to—

MEMORANDUM OF DECISION - 10

>> (A) the services that such agency will provide to such person; or
>
> (B) the benefits and risks that may result if such person becomes a debtor in a case under this title;
>
> . . .
>
> (c)   . . .
>
> (5) Notwithstanding any other provision of Federal law and in addition to any other remedy provided under Federal or State law, if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may—
>
>> (A) enjoin the violation of such section; or
>>
>> (B) impose an appropriate civil penalty against such person.

A bankruptcy attorney is a debt relief agency. *See* § 101(12A) (defining "debt relief agency" as "any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration"); *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 232 (2010) (holding that a bankruptcy attorney falls within the definition of a "debt relief agency."). The Code also defines "assisted person" as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $204,425."[6] Section 101(3). Thus, Youngblood qualifies as a debt relief agency as Debtor claimed primarily consumer debts and nonexempt property valued at less than $204,425.

---

[6] This figure is subject to adjustment and was adjusted to $204,425 effective April 1, 2019. The amount increased to $226,850 on April 1, 2022. The case at issue here was filed when the amount was $204,425.

MEMORANDUM OF DECISION - 11

As the statute indicates, if a debt relief agency represents to an assisted person that it will provide certain services in connection with a bankruptcy case, and then fails to perform those services, the debt relief agency has violated § 526(a)(1). Moreover, § 526(a)(2) is violated if a debt relief agency makes, or counsels or advises any assisted person to make, a statement in a document that is filed with the court, that is untrue or misleading, or using reasonable care should have been known to be untrue or misleading. Finally, if a debt relief agency misrepresents the services that it will provide to an assisted person or the benefits and risks that may result if such person files a bankruptcy petition, then § 526(a)(3) may have been violated.

The Court finds Youngblood violated § 526(a)(1) and (a)(3) as a debt relief agency in this case. Youngblood's Disclosure stated he would represent Debtor at the meeting of creditors. He failed to do so. Moreover, a clear and consistent pattern and practice of violating § 526 has been demonstrated. Of the seven cases assigned to the undersigned Judge in which the UST filed the sanctions motion, this Court has determined the following:

| | |
|---|---|
| Violation of Rule 1007 and § 521: | 2 cases |
| 2016(b) disclosure problems: | 7 cases |
| Conflict of interest in fee agreement: | 6 cases |

Add those to the findings in the May 2022 decisions on the 44 cases before the Honorable Joseph M. Meier (20 Rule 1007 violation cases; 31 Rule 2016(b) disclosure problem cases; and 23 conflict cases), and the Court concludes the UST has established a clear pattern and practice of Youngblood violating § 526. *See In re Hanawahine*, 577 B.R.

MEMORANDUM OF DECISION - 12

573, 580 (Bankr. D. Haw. 2017) (a pattern and practice was established by the fact that bankruptcy courts in three other jurisdictions had sanctioned the bankruptcy firm and/or its principal for abandoning debtors, and a motion was pending in a fourth jurisdiction). Such violation exposes Youngblood to both injunctive and civil penalties.

### B.    Sanctions and Penalties

As outlined above, Youngblood engaged in multiple forms of sanctionable conduct.  In response, the UST seeks cancelation of the contract between Youngblood and Debtor, disgorgement of Youngblood's $2,210 fee, injunctive relief, and imposition of a civil penalty.

#### 1.    Section 329 and Disgorgement of Fees

The UST seeks to void or cancel the contract of employment between Youngblood and Debtor pursuant to § 329.  However, based on Youngblood's representations in other cases that he was no longer able to represent clients, his failure to appear at the January 3 hearing on the UST's sanctions motion, and his failure to file an amended Rule 2016(b) disclosure statement, the Court removed Youngblood as counsel of record and terminated the attorney client relationship between Youngblood and Debtor on February 3, 2022. Doc. No. 45.  Thus, the UST's request is moot as the relief has already been granted.

As the Court has already cancelled the contract between Youngblood and Debtor, it now turns to the issue of disgorgement.  Section 329(b) provides that if the compensation paid to a debtor's counsel exceeds the reasonable value for the services provided, "the court may cancel any such agreement, or order the return of any such payment, to the extent excessive[.]"  Courts interpreting this provision have looked

MEMORANDUM OF DECISION - 13

beyond the quantity of fees charged and used it to redress other issues with the attorney client relationship. *See e.g., In re Grimmett*, 2017 WL 2437231 at *9 (fees deemed excessive because fee agreement and collection measures created conflict of interest); *Hale v. United States Tr. (In re Basham),* 208 B.R. 926, 932 (9th Cir. BAP 1997) (the record "supports the bankruptcy court's finding that the fees were unreasonable given the . . . failure to provide competent and complete representation of the [debtors]); *In re Martin*, 197 B.R. 120, 126 (Bankr. D. Colo. 1996) ("The compensation to be paid to an attorney can be deemed excessive for a host of reasons, including but not limited to an attorney's failure to perform agreed upon services, failure to comply with the disclosure requirements, the existence of conflicts of interest, and the like.").

The Bankruptcy Code's disclosure requirements are mandatory, and courts have held that an attorney who fails to comply with those requirements forfeits any right to receive compensation. *Hale*, 208 B.R. at 930–31 (citing *Peugeot v. United States Tr. (In re Crayton),* 192 B.R. 970, 981 (9th Cir. BAP 1996)). Once the bankruptcy court determines that an attorney has violated § 329 and Rule 2016, the bankruptcy court has the authority to order the attorney to disgorge all of the attorney's fees. *Hale,* 208 B.R. at 931; *In re Blackburn*, 448 B.R. 28, 43 (Bankr. D. Idaho 2011) ("The state of the law is clear—an attorney who neglects to meet the disclosure requirements of § 329(a) and Rule 2016(b), even if inadvertently, forfeits the right to receive compensation for services rendered and may be ordered to return fees already received."). Indeed, the Tenth Circuit held that "full disgorgement is [not] always appropriate for failure to disclose under § 329[,] [b]ut it should be the default sanction, and there must be sound reasons for

MEMORANDUM OF DECISION - 14

anything less." *SE Prop. Holdings, LLC v. Steward (In re Stewart)*, 970 F.3d 1255, 1267 (10th Cir. 2020). The Ninth Circuit concluded that even a negligent or inadvertent failure to fully disclose relevant information under Rule 2016 may result in denial of requested fees. *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park–Helena Corp.),* 63 F.3d 877, 882 (9th Cir. 1995). Finally, the caselaw is clear that filing an inaccurate disclosure statement "is appropriate basis for the total disallowance of compensation by counsel." *Grimmett*, 2017 WL 2437231 at *10; *see also Hale,* 208 B.R. at 931; *Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis)*, 113 F.3d 1040, 1045–46 (9th Cir. 1997); *Park–Helena Corp.*, 63 F.3d at 881–82. Here, Youngblood's Disclosure was internally inconsistent and unclear, and thus provides grounds for disgorgement of the entire $2,210 fee charged by him in this case.[7]

2. **The Court's Inherent Powers and § 526(c)**

The Supreme Court stated that an Article III federal court has the inherent power "to control admission to this bar and to discipline attorneys who appear before it." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991). The Ninth Circuit recognized that bankruptcy courts also "have the inherent power to sanction that *Chambers* recognized exists within Article III courts." *Caldwell v. Unified Cap. Corp.* (*In re Rainbow Mag., Inc.*), 77 F.3d 278, 284 (9th Cir. 1996); *see also In re Aleman*, 2015 WL 1956271, at *1–2 (Bankr. D. Idaho Apr. 29, 2015); *In re Hurd,* 2010 WL 3190752, at *2 (Bankr. D. Idaho Aug. 11, 2010) ("A bankruptcy court has the authority to regulate the practice of

---

[7] The Disclosure indicates "the fees described above [$2,210] **DO NOT** include the filing fee." Doc. No. 5 at ¶ 7 (emphasis in original). As such, the Court concludes Debtor paid the filing fee separately.

MEMORANDUM OF DECISION - 15

lawyers who appear before it. Such authority stems from the court's inherent powers, the Code and the Rules."); *Gardner v. Law Office of Lyndon B. Steimel (In re Valentine)*, 2014 WL 1347229, at * 3 (Bankr. D. Idaho Apr. 3, 2014) ("The BAP recognized that, under Ninth Circuit precedent, the bankruptcy courts have the power to sanction under their civil contempt authority under § 105(a) and under their inherent sanction authority." (internal quotations omitted)).

These inherent powers are not without limits, however. "Because of their potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44. Thus, like the bankruptcy court's civil contempt authority, inherent sanction authority "does not authorize significant punitive damages." *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1197 (9th Cir. 2003) (noting that the Ninth Circuit has "refrained from authorizing a punitive damage award under the bankruptcy court's inherent sanction authority"). "Civil penalties must either be compensatory or designed to coerce compliance." *Dyer,* 322 F.2d at 1192 (citing *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38 (9th Cir. 2001)).

When there is bad faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the Court ordinarily should rely on the Rules rather than its inherent power. But if in the informed discretion of the Court, neither the statute nor the Rules are up to the task, the Court may safely rely on its inherent power. *Chambers*, 501 U.S. at 50. As to statutory authority, if a clear and consistent pattern or practice of violating § 526 is found as is the case here, § 526(c) permits the Court to enjoin the violation and impose a civil penalty against the attorney. The UST asks for both an

MEMORANDUM OF DECISION - 16

injunction and the imposition of a civil penalty under the Court's inherent powers and § 526.

### a.     Injunctive Relief

While the UST seeks injunctive relief against Youngblood and such relief has been proven to be appropriate, it has already been granted. First, the UST requests Youngblood be suspended from practice before this Court until the issues raised in the pending motion have been corrected. This request is moot, as Youngblood has been suspended under this Court's reciprocal discipline protocols and currently has no filing privileges.[8]

Second, the UST seeks to impose certain conditions on Youngblood's ability to file in this Court should Youngblood return to the practice of law. However, an injunction containing those conditions was issued by Chief Judge Meier in May 2022, when he ruled on the 44 cases pending before him on identical sanctions motions. Chief Judge Meier entered orders requiring that if Youngblood returns to the practice of law, he is required to:

> a. . . . obtain, file, and retain each debtor's wet signatures in accordance with the requirements of the Code, Rules, Local Rules and the Court's ECF Procedures;
>
> b. . . . file a statement bearing a wet signature from the client, attesting that Youngblood has met with the client and reviewed all important documents prior to filing; and

---

[8] Youngblood failed to pay his annual bar dues, and on March 14, 2022, the Idaho Bar Association suspended him from the practice of law. As a result, this Court issued a reciprocal notice of suspension and turned off Youngblood's electronic filing privileges.

MEMORANDUM OF DECISION - 17

   c. [file a statement] that the client has had a reasonable opportunity to converse with Youngblood and to ask questions, and that Youngblood has responded to those questions.

*See In re Andreasen*, Case No. 19-40324-JMM at Doc. No. 54. The only condition Chief Judge Meier declined to impose was the UST's request that Youngblood's future clients include an assertion in their statement that they were "satisfied" with Youngblood's representation. To the extent the UST seeks an injunction specifically requesting that assertion be included, the Court agrees with Chief Judge Meier and does not find it appropriate. The Court will not require every client be "satisfied" with Youngblood's work. Thus, the Court will not order further injunctive relief to that already imposed by Chief Judge Meier.

### b.  Civil Penalty

Finally, the UST asks the Court to impose a civil penalty pursuant to § 526(c)(5)(B)[9] to deter Youngblood from making untrue and misleading statements and representations in the future. While § 526(c)(5)(B) permits the imposition of a civil penalty where a pattern and practice of violations has occurred, the Court declines the UST's invitation here.

A civil penalty must be appropriate in amount and intended to deter violative conduct in the future. *In re Hanawahine*, 577 B.R. at 580 (citing *In re Huffman*, 505 B.R. 726, 766 (Bankr. S.D. Miss. 2014)); *In re Dellutri L. Grp.*, 482 B.R. 642, 653–54 (Bankr.

---

[9] This statute provides, "if the court, on its own motion or on the motion of the United States trustee or the debtor, finds that a person intentionally violated this section, or engaged in a clear and consistent pattern or practice of violating this section, the court may . . . (B) impose an appropriate civil penalty against such person."

MEMORANDUM OF DECISION - 18

M.D. Fla. 2012) (citing *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 191 (1949) (a civil sanction is "remedial in nature and intended to enforce compliance.")). While the UST has established a clear and consistent pattern of violations on Youngblood's part, the Court finds a civil penalty unnecessary as a deterrent. The Court will order disgorgement of the fees charged in this case, and an injunction exists that will require significant record keeping and reporting requirements in future cases should Youngblood return to the practice of law. These measures are designed to curtail Youngblood's cavalier approach to the practice of law and ensure that any future practice conforms to applicable statutes, rules, and ethical responsibilities. As such, an additional deterrent in the form of a civil penalty is unwarranted here.

**CONCLUSION**

Finding merit to many of the allegations raised in the UST's motion for sanctions, the Court will order disgorgement of the $2,210 in fees Youngblood charged Debtor for his services. The Court will not impose any additional injunction to that which is already in place or civil penalty.

DATED: August 3, 2022



_____
NOAH G. HILLEN
U.S. Bankruptcy Judge

MEMORANDUM OF DECISION - 19